**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KEVIN PETRIE and DIANA PETRIE,

*Plaintiffs,*

vs.

Case No. 17-1021-EFM-TJJ

PENSION ADVISORS, INC.,

*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiffs Kevin and Diana Petrie filed a Complaint against the Defendant Pension Advisors, Inc. ("PAI"), asserting various claims arising from a defective pension plan drafted by PAI. The Complaint went unanswered, and a clerk's entry of default was entered against PAI. Shortly thereafter, PAI filed a Motion to Vacate the Clerk's Entry of Default and for Leave to File Responsive Pleading (Doc. 5). For the reasons stated below, the Court grants PAI's motion.

## I.     Factual and Procedural Background

The Petries filed their Complaint on January 26, 2017. They attempted to serve a summons on PAI via certified mail. It was mailed to PAI at 501 SE 4th Street in Bartlesville, Oklahoma. The summons specifically named Trevor Sutterfield as the intended recipient. Sutterfield is PAI's registered agent. Also located at 501 SE 4th Street is Sutterfield Financial Group, Inc. Trevor Sutterfield is the registered agent for Sutterfield financial as well.

On January 30, the summons was received and signed for by Rachel Holdredge.  PAI claims that Holdredge is the receptionist for Sutterfield Financial.  PAI asserts that instead of forwarding the summons to PAI, Holdredge "treated [it] as if it were any other piece of mail," and so the summons did not immediately reach PAI.   Nonetheless, PAI explains that sometime later "the Complaint ultimately found its way to someone at Pension Advisors."  PAI contends that it intended to contest the Complaint, and forwarded it on to its insurance company for consideration.  But the Complaint went unanswered.  On March 28, the Petries moved for a clerk's entry of default.  At that time, PAI contends that its insurer was reviewing the claim and assigning defense counsel.  On March 29, the clerk entered default against PAI pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  The Court's docket reflects that the entry of default was mailed to PAI via regular mail, but PAI claims it never received such notice.

PAI asserts that it only became aware of the default on April 10.  And on April 11, this motion to vacate the clerk's entry of default was filed (Doc. 5).  In that motion, PAI argues that the Petries have not demonstrated proper service, and thus were not entitled to an entry of default.  Further, PAI argues that the Court should vacate the entry of default because the Petries would not be prejudiced and PAI has a meritorious defense to the claims.  Additionally, PAI seeks the Court's leave to file a response to PAI's Complaint.  The Petries oppose PAI's motion, which is ripe for the Court's consideration.

## II.     Discussion

**A.     Motion to Vacate**

The decision to set aside an entry of default lies within the Court's discretion.[1]  Because the Petries obtained a clerk's entry of default, as opposed to a default judgment, PAI must show good cause.[2]  The good cause standard is fairly liberal because "[t]he preferred disposition of any case is upon its merits."[3]  Three factors guide the Court's consideration of whether to vacate a clerk's entry of default: (1) whether PAI's culpable conduct caused the default; (2) whether the Petries will be prejudiced if the entry of default is set aside; and (3) whether PAI has a meritorious defense.[4]  The Court will consider each factor in turn.

### 1.     *PAI's Culpability*

#### a.     Service of Process

PAI argues that it bears no culpability for the entry of default because it was not properly served.  According to PAI, although the Petries mailed the summons to the correct office building, it was received and signed for by Rachel Holdredge, a receptionist for Sutterfield Financial—a separate company located in the same building as PAI.  Instead of forwarding the summons to PAI, she treated it like regular mail and apparently never passed it on to Trevor Sutterfield, PAI's registered agent.

The Petries disagree, noting that PAI and Sutterfield Financial are closely related.  Trevor Sutterfield is listed as the registered agent for both businesses.  The businesses' respective

---

[1] *Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003).

[2] Fed. R. Civ. P. 55(c).

[3] *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

[4] *Meissner*, 2014 WL 590377, at * 1 (citing *Gilmore v. Carlson*, 72 F. App'x 798, 801 (10th Cir. 2003)).

websites identify Trevor Sutterfield as the vice president of PAI and the president of Sutterfield Financial, and indicate that the business share several employees. Additionally, PAI and Sutterfield Financial share the same phone and fax numbers. PAI does not allege that any other business occupy the building at SE 4th Street.

Rule 4 of the Federal Rules of Civil Procedure govern service of process. Relevant here, Rule 4(e)(1) provides that service may be completed by following the forum state's law. Under Kansas law, service upon a corporation is governed by K.S.A. § 60-304(e).[5] Service may be made on a corporation by:

> (1) Serving an officer, manager, partner or a resident, managing or general agent;
>
> (2) leaving a copy of the summons and petition or other document at any of its business officers with the person having charge thereof; or
>
> (3) serving any agent authorized by appointment or by law to receive service of process, and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
>
> Service by return receipt delivery on an officer, partner or agent must be addressed to the person at the person's usual place of business.[6]

Here, the Petries sent the summons to PAI via certified mail. It was specifically addressed to Trevor Sutterfield, PAI's registered agent, at PAI and Sutterfield's place of work.[7] Rachel Holdredge signed for the summons, acknowledging receipt of the Complaint addressed to PAI and Trevor Sutterfield. As this Court explained in *Drummond v. Armata Logistics, Inc.*,[8] given these facts the Petries have demonstrated sufficient service. "Kansas statute § 60-304(e) simply

---

[5] *Drummond v. Armata Logistics, Inc.*, 2014 WL 2897849, at *2 (D. Kan. 2014).

[6] K.S.A. § 60-304(e).

[7] Both PAI and Sutterfield Financial are located at the building to which the summons was addressed, and it appears that Trevor Sutterfield occupies an executive position at each business.

[8] 2014 WL 2897849 (D. Kan. 2014).

requires that 'service by return delivery on an . . . agent . . . be *addressed* to the person at the person's usual place of business.' There is no requirement in the statute that delivery be *accepted* only by that registered agent."[9] By sending the summons via certified mail addressed to PAI's registered agent at his ordinary place of business, the Petries properly served PAI.

PAI argues that this case is distinguishable because here, unlike in *Drummond*, the person who received service was not employed by PAI. Therefore, PAI contends that this case presents defective service "because the complaint was received by an individual who was not employed by PAI, located on a different floor from PAI, and not authorized to accept service on behalf of PAI." This argument misreads *Drummond* and PAI's purported distinction carries no weight. In *Drummond*, it was impossible to tell who had signed for the documents.[10] All that was known was that it was not the registered agent.[11] Therefore, the recipient's employment status had no bearing on the analysis in *Drummond*, because the recipient's identity was unknown. Accordingly, PAI fails to distinguish the instant case from *Drummond*.

For the reasons stated above, the Court finds that the Petries have demonstrated proper service on PAI. And so the Court rejects PAI's argument that it cannot be held culpable because it was not properly served. That said, the fact that PAI was properly served does not automatically mean that the entry of default will stand. The Court will still consider PAI's culpability before moving onto the matters of prejudice and a meritorious defense.

---

[9] *Id.* at *3 (emphasis in original).

[10] *Id.*

[11] *Id.*

(b)     Culpable Conduct

Outside of their improper service argument, PAI claims that it has not displayed any culpable conduct.  Rather, PAI argues that it acted quickly upon learning of adverse action against it.  PAI asserts that its quick response "reflects a desire on the part of PAI to mount a defense to the allegations asserted against it and reinforces the idea that the failure to timely respond was an oversight while it worked to assemble a defense."  While the Court appreciates PAI's timely effort to resolve its mistake, such conduct does not completely absolve PAI of an culpability for the delay.

"A moving party need not come into court completely unblemished, but neither must a district or appellate court ignore the party's obvious culpable behavior."[12]  As noted above, PAI first attacked the Petries' service, insisting that PAI and Sutterfield Financial were two separate and distinct companies.  But the facts tell a different story.  The businesses have the same phone number, fax number, registered agent, and share several employees.  The Court suspects that the distinction between PAI and Sutterfield Financial is little more than a technicality.  But even accepting as true PAI's assertion that the businesses are separate, the Petries would bear no fault for the implausibly poor mail-sorting system that PAI and Sutterfield Financial allegedly employed.  A receptionist at a company that appears to be very closely related to PAI signed for a summons that was addressed to PAI and its registered agent.[13]  PAI was—or should have been—aware of the lawsuit against it.  And "[w]hen a party has actual or constructive notice of a lawsuit, yet completely fails to answer or otherwise communicate with the Court, defendant's

_____

[12] *United States v. Timbers Preserve, Routt Cty., Colo.*, 999 F.2d 452, 455 (10th Cir. 1993).

[13] This registered agent was also the registered agent for Sutterfield Financial, so even accepting PAI's claim that the mail was wrongly received by Sutterfield Financial, PAI's agent still should have received notice of the summons.

failure is willful and 'demonstrates complete disregard for the authority of the Court.' "[14] Accordingly, the first factor—whether PAI's culpability contributed to the entry of default—weighs in the Petries' favor.

### 2. Prejudice to the Petries

PAI argues that the Petries would not be prejudiced if the Court granted the motion to vacate. The Petries did not address this argument. PAI filed the instant motion a little over two months after the case was filed, and about two weeks after default was entered. Courts have found that such delays do not significantly prejudice a plaintiff.[15] Accordingly, the second factor weighs in PAI's favor.

Although relevant law dictates that a delay such as this does not significantly prejudice the Petries for the purposes of PAI's motion to vacate, the Court cannot ignore the fact that PAI's failure to respond to the Petries' Complaint is not entirely harmless. The Petries did their part to serve the summons on PAI. But for some unknown reason—whether dreadful mail-sorting or mere oversight—PAI failed to timely respond to the Petries' Complaint. For that reason, the Petries sought a clerk's entry of default, as was their right. And now, the Petries are forced to respond to this motion to vacate, even though they bear no fault in PAI's failure to timely respond to their Complaint. With that in mind, the Court invites the Petries to submit a claim for attorneys' fees and expenses arising from the filing of the motion for an entry of default and their response to PAI's motion to vacate, and if the Court determines that they are reasonable, it will order PAI to pay such costs to the Petries.

---

[14] *Olivas v. Brentwood Place Apartments, LLC*, 2010 WL 2952393, at *2 (D. Kan. 2010) (quoting *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001).

[15] *See, e.g., Clinical Reference Laboratory, Inc. v. Salugen Biosciences, Inc.*, 2013 WL 1816352, at *2 (D. Kan. 2013).

### 3.    PAI's Meritorious Defense

The third factor also weighs in PAI's favor. "The burden to show a meritorious defense is light."[16]  In their Complaint, the Petries allege that they hired PAI to design a pension plan that qualified under § 412(i) of the Internal Revenue Code, but PAI failed to do so.  PAI contends that the plan it designed met the Petries' needs, and its claims are entirely without merit.  Furthermore, PAI asserts that the Petries failed to mitigate any losses that they may have suffered.  In making these claims, PAI has satisfied its burden of asserting a meritorious defense.[17]

Even though PAI is to blame for its own failure to respond to the Complaint, two of the three factors support PAI's request that the Court vacate the clerk's entry of default.  Those two factors, along with the Court's strong preference for disposing of a case on its merits, persuade the Court to vacate the clerk's entry of default.  PAI's motion to vacate is therefore granted.

### B.    Motion for Leave to File a Response

PAI also seeks leave to file a response to the Petries' Complaint.  Such a request is governed by Rule 6 of the Federal Rules of Civil Procedure.  PAI must show excusable neglect, which presents a higher standard than the good cause that must be shown in order to set aside an entry of default.[18]  The Court considers several factors in determining whether a defendant has shown excusable neglect.  Namely, the Court looks at (1) the danger of prejudice to the opposing party; (2) the length of delay caused by the neglect and its impact on judicial proceedings; (3) the

---

[16] *Super Film of Am., Inc. v. UCB Films, Inc.*, 2004 WL 2413497 at *2 (D. Kan. 2004).

[17] *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978) (noting that the Court accepts the defendant's facts as true when determining whether he has a meritorious defense).

[18] *Alsbrook v. Collecto, Inc.*, 2010 WL 4067145, at *1-2 (D. Kan. 2010).

reason for the delay and whether it was in the reasonable control of the moving party; and (4) the existence of good faith on the part of the moving party.[19]

1.      *Danger of Prejudice to the Petries*

Once again, the length of delay that would be caused in this case is relatively short. The original answer date in this case was February 20, and PAI filed this motion on April 11. In other words, PAI sought leave to file its response less than two months after the original answer date. Such a delay would not significantly prejudice the Petries.[20] This factor weighs in favor of PAI.

2.      *Length of Delay and Impact on Judicial Proceedings*

This factor is similar to first, and once again, the length of delay is relatively insignificant. Especially in this case: in the entry of default, the clerk noted that the matters submitted to the Court were "wholly inadequate to allow default to be entered for a sum certain." For that reason, even if the entry of default remained, further proceedings would have still been required in this case. Therefore, granting PAI leave to respond to the Petries' Complaint would not significantly add to the Court's docket in this case.

3.      *Reason for Delay*

This factor "is often the decisive factor in determining excusable neglect."[21] Courts are typically more forgiving of the mishandling of documents.[22] But courts are less forgiving when missed deadlines occur as a result of poor lawyering, such as a misinterpretation of the rule or

---

[19] *Id.* at 2.

[20] *See Welch v. Centex Home Equity Co.*, 2004 WL 2348295, at *1 (D. Kan. 2010) (finding that a two-month delay between original answer deadline and the plaintiff's request for leave was "relatively innocuous.").

[21] *Alsbrooks*, 2010 WL 4067145, at *2.

[22] *Scott v. Power Plant Maintenance Specialists, Inc.*, 2010 WL 1881058, at *3 (D. Kan. 2010).

poor tactical decisions.[23]  Here, PAI alleges the mishandling of documents: Holdredge treated the summons like regular mail, and it did not timely reach PAI.  But PAI also alleges that at the time default was entered, "PAI's insurer was actively engaged in reviewing the claim and assigning defense counsel."  That looks like more like poor lawyering than the mishandling of documents.  If PAI—or its insurer—knew of the claim, it also should have known that it needed to respond.

Ultimately, even though the Court is suspect of PAI's claim that it is meaningfully distinct from Sutterfield Financial, PAI does allege that it mishandled the summons, which is usually a forgivable offense.  But once the summons reached PAI, it should have contacted the Court: PAI provides no explanation for not doing so.  In the end, the delay was PAI's fault, and the Court has heard no good explanation as to why it happened.  For that reason, this factor weighs against PAI.

### 4. Good Faith

The last factor is whether PAI acted in good faith.  In considering this factor, courts typically look favorably on a party acting promptly upon discovering its error.[24]  PAI alleges that it acted in good faith by reaching out to PAI when it became aware of the default and promptly moving for judicial relief.  The Court has no reason to believe that PAI acted in bad faith in failing to respond to the Petries' Complaint.  And the Court is certain that PAI wants to respond because it believes, in good faith, that it has a meritorious defense to the Petries' claims.  But PAI's representation that it was never served because PAI and Sutterfield Financial are entirely separate and distinct raises an inference of bad faith.  For that reason, this factor is neutral.

---

[23] *Id.* at *4.

[24] *See, e.g., Claimsolution, Inc. v. Claim Solutions, LLC*, 2017 WL 2225225, at * 4 (D. Kan. 2017).

In the end, two factors weigh in PAI's favor, one weighs against, and one is neutral. While PAI's case for leave to respond is not the most compelling, the Court once again falls back on its preference for resolving disputes on the merits. Accordingly, the Court grants PAI's request for leave to respond to the Petries' Complaint.

### III.    Conclusion

The Court prefers to dispose of its cases on the merits. And while that preference does not excuse parties who willfully ignore a summons or fail to timely respond to complaints and filings, it does allow the Court to exercise its discretion and forgive minor delays in the judicial process. Because PAI acted quickly after the Petries obtained an entry of default, the judicial process has not been significantly impeded and the Petries have not been greatly prejudiced. Accordingly, the Court grants PAIs motion to vacate and request for leave to respond to the Complaint. But PAI's misstep is not harmless. The Petries were forced to respond to a motion that would have been entirely unnecessary had PAI exercised more diligence. And in that motion, the Petries had to respond to a service-of-process attack that the Court considers less than sincere. For that reason, PAI must pay the reasonable costs associated with the Petries' filing of the motion for an entry of default and their response to the instant motion.

**IT IS THEREFORE ORDERED** that PAI's Motion to Vacate Clerks' Entry of Default and Request for Leave to File Responsive Pleading (Doc. 5) is **GRANTED.** PAI shall file its answer on or before June 2, 2017.

**IT IS FURTHER ORDERED** that PAI pay the reasonable costs incurred by the Petries in filing its Motion for an Entry of Default and responding to PAI's Motion to Vacate (Doc. 5).

**IT IS SO ORDERED**.

Dated this 26th day of May, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE